# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MONA FAYE C., | Case No.: 1:21-cv-00140-DCN-REP |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent. | |

Pending is Petitioner Mona Faye C.'s Petition for Review (Dkt. 1), appealing the Social Security Administration's denial of her applications for Title II and Title XVI benefits.  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation:

## I.  ADMINISTRATIVE PROCEEDINGS

On December 4, 2018, Petitioner protectively filed a Title II application for a period of disability and disability insurance benefits.  Petitioner also filed a Title XVI application for supplemental security income on July 30, 2019.  In both applications, Petitioner alleged disability beginning December 4, 2016.[1]  Both applications were denied on January 17, 2019, and again on reconsideration on March 14, 2019.  On or around April 10, 2019, Petitioner filed a

---

[1]  Petitioner's Brief states that she "subsequently amended her alleged onset date to November 7, 2018" – the day after a November 6, 2018 decision denied earlier-filed claims of disability. Pet.'s Brief at 1-2 (Dkt. 18) (citing AR 49 (Petitioner's counsel stating during March 5, 2020 hearing: "With the previous hearing being November – I think the decision came out November 6th of 2018 . . . She is quite adamant that her conditions have just continued to get worse.  And so, we're going to amend that to November 7th of 2018.")).  The at-issue April 3, 2020 decision references the December 4, 2016 alleged onset date.  AR 25.

**REPORT AND RECOMMENDATION - 1**

Request for Hearing before an Administrative Law Judge ("ALJ").  On March 5, 2020, ALJ Wynne O'Brien-Persons held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Bradford D. Myler, appeared and testified.  Mark J. Schwager, an impartial vocational expert, also appeared and testified at the same hearing.

On April 3, 2020, the ALJ issued a decision denying Petitioner's claims, finding that she was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council.  On January 26, 2021, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner filed this case.  She raises two points of error: (i) the ALJ erred when she improperly assessed the severity of Petitioner's mental impairments, and (ii) the ALJ erred in her evaluation of the opinion evidence and Petitioner's physical residual functional capacity ("RFC").  Pet.'s Brief at 1, 16-22 (Dkt. 18). Petitioner requests that the Court either reverse the ALJ's decision and find that she is entitled to benefits or remand the case for further proceedings and award attorneys' fees.  *Id.* at 22.

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  *See* 42 U.S.C. § 405(g).  If there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error.  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  <u>REPORT</u>

#### A.     **Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

**REPORT AND RECOMMENDATION - 3**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant has not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in SGA since December 4, 2016 (the alleged onset date).  AR 28.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner has the following severe medically determinable impairments: "degenerative disc disease, status post left arm fracture, and bilateral foot neuropathic pain."  AR 28-31.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

**REPORT AND RECOMMENDATION - 4**

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ concluded that Petitioner's above-listed medically determinable impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  AR 31-32.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's RFC is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ concluded:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except she can lift only 10 pounds with the non-dominant left upper extremity.  She can occasionally engage in left upper extremity overhead reaching and abduction.  She can frequently reach with the left upper extremity in all other directions.  She can never climb ladders, ropes, or scaffolds, and only occasionally climb stairs.  She can frequently balance, stoop, kneel, crouch, or crawl.  She must avoid concentrated exposure to cold and vibration, and must avoid all exposure to hazards.

AR 32.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show

**REPORT AND RECOMMENDATION - 5**

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th

Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do

other work and meets the duration requirement, she is disabled.  Here, the ALJ found that as of

the date of her decision, Petitioner was capable of performing her past relevant work as an

assistant manager at a convenience store and counter attendant.  AR 35-36.  According to the

ALJ, this work does not require the performance of work-related activities precluded by

Petitioner's RFC.  *Id*.  Based on these findings, the ALJ concluded that Petitioner was not

disabled.  AR 36.

**B.      Analysis**

> 1.      The ALJ Properly Evaluated Petitioner's Mental Impairments at Step Two
>         of the Sequential Process

Petitioner argues that the ALJ erred in ruling that certain of her medically determinable

mental impairments were non-severe.  Pet.'s Brief at 16-19 (Dkt. 18).  Specifically, Petitioner

claims that her "mental health issues" preclude her from performing basic work activities and,

thus, should have been considered medically severe impairments at step two of the sequential

process.  *Id*.; *see also* Pet.'s Reply Brief at 1-2 (Dkt. 20).  The Court disagrees.

At step two, the ALJ must determine if the claimant has a medically severe impairment or

combination of impairments.  *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing

*Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987)).  The regulations provide that "[a]n impairment

or combination of impairments is not severe if it does not significantly limit [the claimant's]

physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1522(a), 416.922(b).

Basic work activities are "the abilities and aptitudes necessary to do most jobs," including: (i)

physical functions such as walking, standing, sitting, lifting, and carrying; (ii) capacities for seeing, hearing, and speaking; (iii) understanding, carrying out, and remembering simple instructions; (iv) use of judgment; (v) responding appropriately to supervision, co-workings, and usual work situations; and (vi) dealing with changes in a routine work setting.  20 C.F.R. §§ 1522(b), 416.922(b).

Step two is a "threshold determination" meant to weed out "weak claims."  *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).  As it relates to mental health disorders, step two requires the ALJ to consider a claimant's functioning in four "broad" mental domains that encompass all or almost all human thought and activity.  Known as the "paragraph B" criteria, these domains include: (i) understanding, remembering, and applying information; (ii) interacting with others; (iii) concentrating, persisting, and maintaining pace; and (iv) adapting or managing oneself.  20 C.F.R. §§ 404.1520a(b)-(c).  The ALJ must rate the claimant's degree of limitation in these areas using a five-point scale: none, mild, moderate, marked, or extreme.  20 C.F.R. § 404.1520a(c)(4).  An "extreme" limitation represents "a degree of limitation that is incompatible with the ability to do any gainful activity," whereas degrees of limitation rated as "none" or "mild" generally reflect a non-severe impairment.  *Id.* at §§ 404.1520a(c)(4)-(d)(1).

Here, the ALJ found Petitioner's mental health issues (represented by the constellation of her major depressive disorder, anxiety, post-traumatic stress disorder ("PTSD"), and histrionic personality disorder) to be medically determinable mental impairments.  However, the ALJ did not include any of them at step two (alongside Petitioner's degenerative disc disease, status post left arm fracture, and bilateral foot neuropathic pain (*see supra*)) because they "do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore non-severe."  AR 29-31 (applying paragraph B criteria and concluding that Petitioner's

mental impairments caused only mild limitations throughout).  The ALJ in turn concluded that Petitioner's mental impairments were non-severe at step two.  *Id*.

Petitioner disagrees, arguing that she has more than mild limitations in two of the four paragraph B domains: (i) interacting with others, and (ii) concentrating, persisting, and maintaining pace.  Pet.'s Brief at 17-19 (Dkt. 18).  These arguments are not persuasive.

First, this is not a situation where the ALJ either found that Petitioner did not have mental health issues or disregarded their possible impact on a disability determination.  To the contrary, as required by the sequential process, the ALJ specifically addressed Petitioner's history with these medically determinable impairments before properly noting that her mental status examinations since the alleged onset date have been "fairly benign."  AR 29 (citing AR 404-05, 412, 419, 423, 713, 716-17, 978, 989, 1015).  The ALJ then cited instances in the medical record where Petitioner was generally described as having a "pleasant mood and lively affect," was "quite pleasant," and "in a great psychological mood"; had learned to live with her symptoms and was in a stable place; and was "doing well on her current level of medication."  AR 29 (citing AR 404-07, 410, 412, 414, 710, 716, 742, 1032, 1059).  Therefore, to the extent Petitioner's arguments regarding the ALJ's step two inquiry turn on the mere existence of certain impairments, they miss the point.  Without more, such arguments are at best incomplete; at worst they are groundless.

Second, dissecting the ALJ's actual analysis at step two, the "interacting with others" domain "refers to the abilities to relate to and work with supervisors, co-workers, and the public."  20 C.F.R. 404, Subpart P, Appendix 1, § 12.00(E)(2).  Examples include "cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation, understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction and

challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." *Id*.  Referencing the time that Petitioner spends with her fiancé and a friend, as well as certain of her daily activities (shopping, attending church, and using Facebook), the ALJ concluded that Petitioner experienced only mild limitations in this area of functioning.  AR 30 (citing AR 73-75, 332-39).

But Petitioner claims that she is actually more limited in this respect, referencing her testimony about how she shops early to avoid crowds, has trust issues with aggressive-looking men, and apparently disputes that she has any personality disorder.  Pet.'s Brief at 17-18 (Dkt. 18) (citing AR 65-66, 110).  She also refers to a November 2019 treatment note with her primary care physician, Steven Kohtz, M.D., noting her "mildly pressured speech" and how she "talks rapidly and does jump from subject to subject."  Pet.'s Brief at 18 (Dkt. 18) (citing AR 989).  These arguments are unconvincing.

To begin, Petitioner's Functional Report elaborates that she goes to the grocery store when there are less people "*so she can move around more freely*," but also concedes that she has *no problems getting along with others*.  AR 335-37.  It is likewise unclear how Petitioner' subjective belief that she does not have a personality disorder aligns with difficulties interacting with others.  Regardless, the ALJ did not find Petitioner's subjective complaints fully credible based upon the medical evidence of record.  AR 33-35.  Petitioner did not challenge the ALJ's credibility determination on appeal and therefore has waived any objection on that issue. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161, n.2 (9th Cir. 2008) ("We do not address this finding because Carmickle failed to argue this issue with any specificity in his briefing."); *Greger v.* Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before district court).  Finally, whatever connection might exist between hurried speech and social interaction difficulties (Petitioner fails to connect these dots), Dr. Kohtz opined (also

**REPORT AND RECOMMENDATION - 9**

in November 2019) that Petitioner's depression is in partial remission and that she is currently

stable, living a fulfilling life with some PTSD triggers, and is highly functional.  AR 984-91).

Petitioner more-or-less agreed during the March 5, 2020 hearing, testifying in response to

questions from the ALJ:

> ALJ: Okay.  So, Ms. [C.], I'm going to read you Dr. Kohtz's notation in November 2019.
>
> PET: Yes, ma'am.
>
> ALJ: He says that you are currently stable, living a fulfilling life with some PTSD triggers.  Your depression is in partial remission.  You don't have intractable migraines, no medication side effects.  And you're highly functional.  Would you agree with that?
>
> PET: He treated me for migraines with some, what was that stuff called, Metroprolol.  And it was working, but it caused a little bit of depression.  So, I did tell him about that.  And he took me off of them.  But before I met Dr. Kohtz, I did suffer from a little bit of depression.  *I mean, my depression comes from not being outside, sunshine, you know, stuff like that.  But I have went through quite a depressive state when I was told that I can no longer work.*
>
> ALJ: Okay.
>
> PET: I had to –
>
> ALJ: But do you agree with the rest of the statement?
>
> PET: I'm living the best life I can.  I –
>
> ALJ: Would you agree that –
>
> PET: I still do have –
>
> ALJ: -- you're highly functional?
>
> PET: -- migraines, though.
>
> ALJ: Do you –
>
> PET: Beg your pardon?

**REPORT AND RECOMMENDATION - 10**

| ALJ: | Would you agree you're highly functional? |
|---|---|
| PET: | *My brain is, my brain works.  But as far as my body, no.* |
| ALJ: | Okay.  All right.  Thank you. |
| PET: | *My brain says go, go, go.  But my body goes oh no.* |
| ALJ: | Ms. |
| PET: | *My back anyway.* |

AR 74-76 (emphasis added).  Thus, when pressed by the ALJ, Petitioner admits that her physical limitations impact her ability to work, *not* her mental issues.  And, relatedly, her mental issues are a *function* of not working; they do not materially *contribute* to her not working.

Third, the "concentrating, persisting, and maintaining pace" domain "refers to the abilities to focus attention on work activities and stay on task at a sustained rate."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(E)(3).  Examples include "initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day."  *Id*.  Pointing to Petitioner's ability to prepare meals, attend medical appointments, complete household chores, move between residences, drive a car, shop, read, watch television, use the Internet (Facebook), and listen to music, the ALJ concluded that Petitioner also experienced only mild limitations in this area of functioning.  AR 30 (citing AR 71-75, 332-39, 443, 1032).

Again, Petitioner claims that she is actually more limited in this respect, commenting how "Dr. Kohtz documented remarkable PHQ-9 scores."  Pet.'s Brief at 19 (Dkt. 18) (citing AR

**REPORT AND RECOMMENDATION - 11**

451,[2] 712, 986).  Recognizing how these tests are administered, what they assess, and how they

apply to Petitioner's circumstance, this argument is without merit as well.

PHQ-9 refers to a specific patient health questionnaire and "is a[n] instrument for making

criteria-based diagnoses of depressive and other mental disorders commonly encountered in

primary care." *Norman v. Berryhill*, 2018 WL 4519952, at *2 (N.D. Cal. 2018) (citing Kurt

Kroenke, MD, et al., *The PHQ-9: Validity of a Brief Depression Severity Measure*, 16 J. Gen.

Intern. Med. 606 (2001)) (internal quotation marks omitted).  But a diagnosis alone does not

equal a severe impairment at step two; rather, that determination requires a more objective

appraisal of the functionally-limiting effects of an impairment – something PHQ-9 scores do not

specifically evaluate.  Separately, "the PHQ-9 questionnaire reflects [the claimant's] reported

self-assessment." *Lim v. Saul*, 2020 WL 2557000, at *8 (N.D. Cal. 2020).  As discussed above,

the ALJ discredited Petitioner's testimony about her subjective symptoms and any challenge to

that determination has been waived.  *See supra*.  Therefore, Petitioner's reliance on her PHQ-9

scores alone to somehow prove severity is compromised.[3]  In this specific setting, they are

distinct from a mental status *evaluation* amounting to an objective diagnostic measuring stick.[4]

---

[2] This treatment note is dated January 17, 2018 – *before* the above-referenced November
7, 2018 "amended" alleged onset date – and therefore offers little evidence of a recognized
disability under the law (assuming that date).  *See Carmickle*, 533 F.3d at 1164-65 (ALJ did not
err in failing to classify carpal tunnel syndrome as severe impairment where medical evidence
addressing impairment was letter dated before alleged disability onset date and where medical
record did not establish any work-related limitations resulting from impairment).

[3] Even so, it is worth noting that Petitioner's PHQ-9 scores were *trending down* over
time – 16 on January 17, 2018 (pre-amended alleged onset date (*see supra*)); 11 on January 22,
2019; and 10 on November 5, 2019.

[4] This context distinguishes the case from *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir.
2017).  In *Buck*, the Ninth Circuit recognized that the rule allowing an ALJ to reject opinions
based on self-reports understandably does not apply in the same manner to opinions regarding
mental illness.  *Id*. at 1049.  But importantly, *Buck* did not overturn the well-settled rule that "[a]
physician's opinion of disability *premised to a large extent* upon the claimant's own accounts of

**REPORT AND RECOMMENDATION - 12**

To be sure, within her own Functional Report, Petitioner states that she has "no memory or concentration difficulties" and no problems completing tasks.  AR 337 (though originally indicating that her "illnesses, injuries, or conditions" affect concentration, Petitioner later elaborating that she has "no memory or concentration difficulties").

In sum, to establish a severe impairment, Petitioner must demonstrate that her understood medically determinable impairments affect her ability to perform basic work activities during the relevant period.  *Supra*.  Based on the record before the Court, Petitioner's mental impairments do not meet this standard.  At best, there are threads of medical evidence that could be interpreted as suggesting the existence of a medically severe mental impairment.  But this is somewhat beside the point.  Here, the ALJ's conclusion that Petitioner's mental impairments have no more than a minimal effect on her ability to work is supported by substantial evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."). Had there been more supporting medical evidence, the landscape from which to judge the ALJ's disability determination would be different.  However, on this record, the ALJ did not err in concluding that Petitioner's mental impairments are not severe.[5]

---

his symptoms and limitations may be disregarded *where those complaints have been properly discounted*" by the ALJ.  *Id.* (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (emphasis added)).  Instead, *Buck* clarified that an ALJ errs when she relies on a claimant's discredited self-reports to reject the "objective measures" of a psychologist's evaluation.  *Id.*  Here, Petitioner's arguments are premised upon the existence of her documented PHQ-9 scores alone – not any separate evaluation by a medical provider that she claims the ALJ improperly rejected.  *Supra*.  Moreover, Petitioner does not even challenge the ALJ's analysis of Dr. Kohtz's May 2019 mental assessment.  AR 35 (finding it "not persuasive," owing to lack of support within Dr. Kohtz's own limited mental findings, limited findings reported by other medical providers, and Petitioner's daily activities).  Thus, *Buck* does not apply to these facts.

[5] An ALJ need not include non-severe limitations in the RFC if they do not cause more than a minimal limitation on a claimant's ability to work.  *Medlock v. Colvin*, 2016 WL 6137399, at *5 (C.D. Cal. 2016) ("Consideration of the limiting effects of all impairments does not

**REPORT AND RECOMMENDATION - 13**

Reversal is not warranted on this issue.

2.   The ALJ Properly Considered the Medical Opinion Evidence

On January 17, 2019, state agency consultant Robert E. Vestal, M.D., opined that

Petitioner had "no new or worsening of condition" from the prior November 6, 2018 denial of

benefits.  AR 149.  On March 12, 2019, state agency consultant Thomas T. Coolidge M.D.,

agreed, opining further that Petitioner's intervening left extremity fracture "did not require

surgical intervention and is projected to improve."  AR 162.  Accordingly, Drs. Vestal and

Coolidge "brought forward" the prior administrative medical findings, confirming that

Petitioner's RFC projected to a reduced range of light work.  *Id*.  The ALJ found these opinions

"generally persuasive" because, "for the most part," she found them to be internally consistent,

well-supported by a reasonable explanation and the available evidence, and consistent with

Petitioner's daily activities.  AR 35.[6]

---

necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work."); *Ball v. Colvin*, 2015 WL 2345652, at *3 (C.D. Cal. 2015) (mild mental impairments "by definition do not have more than a minimal limitation on Plaintiff's ability to do basic work activities . . . which translates in most cases into no functional limitations," and thus ALJ was not required to include them in RFC).  Here, the ALJ did consider Petitioner's mild mental limitations in assessing the RFC.  *See* AR 30-31 ("The following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis.").  This is enough.  *See, e.g.*, *Scotellaro v. Colvin*, 2015 WL 4275970, at *9 (D. Nev. 2015) ("Although the ALJ did not extensively discuss Plaintiff's mental impairment at step four, he thoroughly discussed the evidence supporting his findings at step two and incorporated them by reference in his RFC analysis.").  Again, the ALJ found that the record did not show that Petitioner's mental impairments caused a significant limitation in her ability to work.

[6]  Under the Social Security Administration's new regulations (applicable to this case), an ALJ is no longer required to give deference to any medical opinion, including treating source opinions.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  The lynchpin of this new standard is "persuasiveness," informed by the following factors: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion."  *Id*; 20 C.F.R. §§ 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and the ALJ must explain how both factors are considered.  *Woods*, 32 F.4th at 792; 20 C.F.R. § 404.1520c(b)(2); *see also* 20

**REPORT AND RECOMMENDATION - 14**

Petitioner argues that the ALJ erred in her evaluation of the opinion evidence when the medical records following Dr. Coolidge's assessment "condemn" any projected improvement to her broken left arm. Pet.'s Brief at 19-22 (Dkt. 18). Petitioner asserts that a more developed record would have contradicted "the only opinion supportive of the ALJ's conclusion" – Dr. Coolidge's – and warranted a disability finding. *Id*. at 22. The Court disagrees.

It is undisputed that Petitioner sustained a non-displaced humeral fracture of the left arm in February 2019. AR 33 (citing 704, 724, 740). As the ALJ discussed, (i) Petitioner remained neurologically intact after the injury; (ii) x-rays revealed early healing within the first month of the injury; (iii) there was no evidence of significant ongoing issues until a year later when Petitioner indicated that her pain was aggravated after picking up a heavy object (but was in no distress at the time and was still able to use her left arm despite the pain); (iv) within 12 months of injury, Petitioner could lift 5-10 pounds with both arms, and a 2-liter soda bottle with her left arm; (v) there is no evidence of nonunion of the fracture or significant neurologic deficits following injury; (vi) surgery was never required; and (vii) Petitioner has not required further conservative care other than medication therapy. AR 33-34 (citing AR 58-61, 747, 1057).

Still, at step two, the ALJ found that Petitioner suffers from status post left arm fracture and that such a medically determinable impairment is severe insofar as it limits her ability to work. AR 28-31. And, at step four, the ALJ specifically accounted for this condition and its corresponding functional limitations. AR 32. Therefore, where Petitioner's arguments depend upon medical records that highlight limitations in Petitioner's left upper extremity or related pain, they are again misplaced. Pet.'s Brief at 21 (Dkt. 18). The ALJ already acknowledged as

---

C.F.R. § 404.1520c(c)(1)-(2) (discussing supportability and consistency factors). The Court reviews the ALJ's persuasiveness determination under these regulations using the substantial evidence standard. *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

**REPORT AND RECOMMENDATION - 15**

much and provided limitations in the RFC to accommodate the same – limitations *more restrictive* than those considered by Drs. Vestal and Coolidge.  Crucially, the issue is not whether Petitioner has a fractured left arm (she does) or whether its related limitations exist (they do), but the extent to which they prevent her from doing any work whatsoever.  On this essential point, the ALJ's consideration of the medical evidence is supported by substantial evidence.

To this point, the ALJ did not fail to develop the record further because such a duty "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  No such occasion presented itself here.  The medical record was not ambiguous, and the record was not inadequate to make a disability determination.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ was not required to contact doctors where record evidence was adequate to make a disability determination).  Indeed, at the March 5, 2020 hearing, Petitioner's counsel represented that there was no need to keep the record open and that the record was complete.  AR 49 (Petitioner's counsel stating: "Good.  So, we've got those in.  So, with that, yeah, the record is complete."); *Runions v. Saul*, 833 Fed. Appx. 121, 123 (9th Cir. 2020) (duty to develop not triggered since, in part, claimant's counsel represented that record was complete).

Reversal is not warranted on this issue.

## IV.  <u>CONCLUSION</u>

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  The ALJ has provided reasonable and rational support for her well-formed conclusions, even if such evidence is susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based

upon proper legal standards and supported by substantial evidence.  The Commissioner's decision should be affirmed and Petitioner's Petition for Review should be denied.

## V.  <u>RECOMMENDATION</u>

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED, that Petitioner's Petition for Review (Dkt. 1) be DENIED, and this action be DISMISSED in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty (20) pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not to exceed twenty (20) pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED:  August 22, 2022



_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 17**